UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MATTHEW LYON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 13-CV-00173 |
| ILLINOIS HIGH SCHOOL | ) | |
| ASSOCIATION, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Lyon has filed suit against the Illinois High School Association ("IHSA") and filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. In Lyon's motion, he seeks to enjoin the IHSA from prohibiting him from participating in his high school's wrestling program as a fifth-year senior. Based on the discussion below, Lyon's Motion for a Temporary Restraining Order is granted.

## BACKGROUND

The following is a statement of factual allegations based on Plaintiff's Verified Complaint and attached exhibits. Plaintiff Matthew Lyon is a senior in high school at Gordon Tech College Prep in Chicago, Illinois. (Compl. ¶ 1.) Lyon was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in grade school, and he has been educated pursuant to an Individualized Education Plan, as provided by the Individuals with Disabilities Education Act. (*Id.* ¶ 2.) Lyon began high school at Torrey Pines High School in San Diego, California, where he began participating in the high school wrestling team as a freshman. (*Id.* ¶¶ 3, 19.) Due to academic problems caused by

Lyon's ADHD, he was ruled academically ineligible to compete on his high school's wrestling team during the second semester of his junior year, the 2010-2011 academic school year.  (*Id.* ¶ 20.)

Lyon moved from California to Illinois in March or April of 2011.  (*Id.* ¶ 21.) Due to Lyon's ADHD, he continued to struggle academically, and repeated his junior year in 2011-2012 at Gordon Tech College Prep.  (*Id.* ¶ 22.)  Gordon Tech has provided various modifications and accommodations to help Lyon's perform with ADHD, including additional time for exams and being assigned to the school's special education counselor.  (*Id.* ¶ 23.)  Lyon joined Gordon Tech's wrestling team during the 2011-2012 wrestling season.  (*Id.* ¶ 24.)  Participating in wrestling at Gordon Tech improved Lyon's self-esteem and provided him with a renewed commitment to his education.  (*Id.*)  This is demonstrated by Lyon's improved grades, his ACT test score of 28, and his assertion that he hopes to attend a four-year college upon his graduation from Gordon Tech. (*Id.*)

Lyon participated in high school wrestling during his freshman, sophomore, and part of his first junior year in California.  (*Id.* ¶ 26.)  Lyon also wrestled during his second junior year of high school, in 2011-2012, at Gordon Tech.  (*Id.*)  By the IHSA's rules, this second junior year is considered his fourth year of participation in the sport, and counts as his seventh and eighth semesters of eligibility.  (*Id.*)

The IHSA rules provide that "after they enroll in the ninth grade, students shall be eligible for no more than eight (8) semesters.  They shall not be eligible for more than the number of semesters for which their school is recognized by the Illinois State Board of Education."  IHSA Rule 3.051.  Additionally, the IHSA provides that "After they enroll

in the ninth grade, they shall not be eligible for more than four (4) school years of competition in any sport." IHSA Rule 3.053. The purpose of the IHSA is "to provide leadership for the development, supervision and promotion of interscholastic competition and other activities in which its member schools engage. Participation in such interscholastic activities offers eligible students experiences in an educational setting which may provide enrichment to the educational experience." IHSA Rule 1.120. Because of the IHSA's participation limitations, the IHSA determined that Lyon is no longer eligible to participate in the high school sport of wrestling, as he cannot be eligible to wrestle for more than eight semesters or more than four years. (Compl. ¶ 27.)

In November 2012, Lyon requested a waiver from the IHSA Executive Director to permit him to wrestle, despite his ineligibility under the IHSA Rules. This request was denied, as was Lyon's request for the IHSA Executive Director to reconsider his decision. (*Id.* ¶ 27.) Lyon appealed that decision to the IHSA Board of Directors; after a hearing on January 7, 2013, the IHSA Board of Directors denied Lyon's appeal and his request for a waiver from the eight-semester and four-year eligibility requirements. (*Id.* ¶ 29.)

Following the final rejection from the IHSA, Lyon filed suit in the Northern District of Illinois. Lyon alleges the IHSA's refusal to allow him to participate in an additional semester of wrestling violates the Rehabilitation Act, 29 U.S.C. § 794(a),[1] and the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA"). Lyon

---

[1] This opinion does not address the issue of the IHSA's potential liability under the Rehabilitation Act, which IHSA stated oral argument would be inapplicable in this case due to IHSA's funding. Therefore, for purposes of this temporary injunction motion, only potential liability under the ADA is considered.

moves for a temporary restraining order and preliminary injunction, arguing that the IHSA's failure to accommodate him will result in his missing the remaining wrestling meets of the season, including meets scheduled to occur on January 10, 11, 12, 15, and 16 of this year. (Compl. ¶ 34.) The IHSA's bar of Lyon's participation in high school wrestling might also prevent him from participating in a tournament scheduled for January 19, 2013, and the State Tournament scheduled to commence on February 2, 2013. (*Id.*)

## LEGAL STANDARD

To obtain temporary injunctive relief, a movant must demonstrate "a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction." *Planned Parenthood of Indiana, Inc. v. Commissioner of the Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th Cir. 2012) (citations omitted) (*Planned Parenthood*). If the movant can meet the burden of these three requirements, a court is then obligated to weigh the balance of harm to the parties if the injunction is granted or denied. *Id.* A court must also consider the impact such an injunction would have on the public interest. *Id.* "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008) (*Girl Scouts*)).

**ANALYSIS**

Each of the requirements of temporary injunctive relief must be considered in turn, to determine if Lyon is entitled to injunctive relief. Provided Lyon meets these three requirements, the potential harm to parties is weighed, as is the impact on the public interest. *Planned Parenthood*, 699 F.3d at 972. In support of his arguments, Lyon relies on the Seventh Circuit's ruling in the case of *Washington v. Indiana High School Athletic Association, Inc.*, 181 F.3d 840 (7th Cir. 1999) (*Washington*). As the facts and application of law in that case are analogous to Lyon's circumstances, a review of the *Washington* opinion is useful. In *Washington*, the plaintiff, Eric Washington, was a learning-disabled high school student in Lafayette, Indiana. *Washington*, 181 F.3d at 842. In the spring semester of the 1994-1995 academic school year, Washington was socially promoted to the ninth grade of Lafayette Jefferson High School, where he continued to flounder academically. *Id.* Early in the 1996-1997 academic year, Washington dropped out of high school. *Id.* Washington played in a basketball tournament in the summer of 1997, sponsored by another high school, Central Catholic High School. *Id.* Washington decided to attend Central Catholic and play basketball there; in 1998, Washington was officially tested and deemed to be learning disabled. *Id.*

Much like the IHSA, Indiana has a governing body for high school athletics, the Indiana High School Athletic Association ("IHSAA"). The IHSAA has a rule limiting "a student's athletic eligibility to the first eight semesters following the student's commencement of the ninth grade ('the eight-semester rule')". *Id.* This rule seeks to discourage the practice of "redshirting[2]," protect athletes' safety, promote equal

5

competition, and promote "the idea that academics are more important than athletics." *Id.* Due to this rule, Washington was ineligible to play basketball in the second semester of the 1998-1999 school year, because that amounted to nine semesters after he commenced the ninth grade. *Id.* Washington sought a waiver of this rule, asking the IHSAA not to count the semesters when he was not enrolled in any high school to count toward his eight-semester total, but the IHSAA denied his request for waiver. *Id.* at 843. Washington sued in district court, and the Indiana district court granted a preliminary injunction, finding that failure to grant a waiver of the eight-semester rule violated the ADA. *Id.*

Under the ADA, to succeed on the claim, the district court in *Washington* noted that he must meet three requirements: "(1) [plaintiff] must suffer from a disability, (2) he must be 'otherwise qualified' to participate in athletics, and (3) he must demonstrate that he is being excluded from playing [the sport] by reason of his handicap." *Id.* The Seventh Circuit in *Washington* found that under the ADA, the plaintiff was not required to demonstrate that the IHSAA intended to discriminate on the basis of the student's disability, rather, the ADA violation could be established simply by showing that "the defendant's refusal to grant Mr. Washington a waiver was a failure to make a reasonable accommodation." *Id.* at 848. The court further held that there must be a causal connection between the disability and Washington's ineligibility. *Id.* The Seventh Circuit upheld the district court's decision to grant injunctive relief, finding that the

---

[2] The Seventh Circuit explained that the practice of redshirting occurs where a student's academic pace is slowed in order to postpone a student's initial participation in athletics, thereby garnering the student a potential physical and athletic advantage over other students. *Washington*, 181 F.3d at 842 n.2.

waiver would not create a fundamental alteration to the IHSAA rule, or undue burdens on IHSAA to implement the waiver. *Id.* at 852. The Seventh Circuit further noted that the waiver of the rule in Washington's case actually promoted his education. *Id.*

*Likelihood of Success on the Merits*

Lyon first argues that a strong likelihood exists that Lyon would succeed on the merits of his claims at trial. Based on the Seventh Circuit's decision in *Washington*, Lyon argues that he would be likely to succeed on his claim, because he can demonstrate that the IHSA is refusing to provide a reasonable accommodation under the ADA. (TRO Mot. at 9.) There does not appear to be a dispute as to whether or not Lyon is disabled for purposes of the application of the ADA due to his ADHD, and Lyon asserts he is otherwise able to compete in wrestling. (TRO at 6-7.) Therefore, Lyon need only demonstrate that the IHSA violates the ADA by refusing to afford him a reasonable accommodation, by waiving the eight-semester rule and four-year eligibility rules. The question to ask, as the Seventh Circuit in *Washington* determined, is "whether waiver of the rule in the particular case at hand would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Washington*, 181 F.3d at 850 (citations omitted). This is, necessarily, an individualized inquiry. *Id.* at 851.

Like the waiver requested in *Washington*, Lyon's request is a minimal one and would not result in fundamental and unreasonable changes to the IHSA Rules. Lyon's case presents a unique circumstance, whereby, because of his disability, he was unable to complete high school in the traditional four years. Instead, because of his ADHD, Lyon struggled academically and thus requires a fifth year to obtain his high school diploma.

By Lyon's account, his involvement in high school wrestling gave Lyon renewed focus on his academics, as well as improved self-esteem. Granting this exception for Lyon, the IHSA will, in fact, be supporting its objective of providing Lyon with the experience of wrestling "in an educational setting which may provide enrichment to [his] educational experience." IHSA Rule 1.120. Providing Lyon with waiver does not place athletics over academics, as it appears that Lyon's participation in wrestling has actually helped him succeed academically.

Moreover, Lyon has argued that permitting the waiver would not hinder any of the other purposes of the IHSA Rules, including providing for fair athletic competition. Wrestlers participate in the sport in various weight classes, and students wrestle only with other students in their weight class; thus, Lyon will only wrestle against students with similar weight, build, and body type; Lyon is also likely to be the same age as much of his competition. (Compl. ¶ 30.)

Providing Lyon with the waiver he seeks in order to continue his participation in wrestling would be a reasonable and only a slight modification of the IHSA Rules. The IHSA's failure to provide this accommodation would likely result in the IHSA's liability under the ADA; therefore, Lyon has demonstrated he is likely to succeed on the merits.

*No Adequate Remedy at Law*

To obtain injunctive relief, Lyon must next demonstrate that no other adequate remedy at law exists. *Planned Parenthood*, 699 F.3d at 972. It is apparent that no other remedy exists which would make Lyon whole again if he does not receive the waiver he seeks. Participation in high school athletics is a unique and finite opportunity. No

monetary compensation can substitute or replicate the experience of playing a high school sport. After this season of wrestling, Lyon will have no other occasion to actively participate in high school wrestling; hence, no other adequate remedy is available to him.

*Irreparable Harm*

Similarly, if Lyon is denied his right to a reasonable accommodation to participate in high school wrestling, as required under the ADA, he will be irreparably harmed. *See Planned Parenthood*, 699 F.3d at 972. Each meet or competition that passes without Lyon's participation is another opportunity that cannot be repeated. The IHSA wrestling competitions will continue to occur as they are scheduled, and the harm to him absent injunctive relief cannot be undone. The clocks cannot be turned back for Lyon to participate in these missed opportunities if injunctive relief is not granted.

*Balance of Harms*

As Lyon is able to meet the three requirements necessary to demonstrate the need for injunctive relief, the potential harm to the parties at issue must be weighed. *Planned Parenthood*, 699 F.3d at 972. First, the potential harm to the IHSA if the injunction is granted must be considered. The IHSA is concerned that the issuance of the injunction will open the floodgates for other high school students to seek similar waivers from its rules. Despite the potential additional administrative burden these waivers might have on the IHSA[3], the benefit is easily outweighed by the promotion of the purpose and goal of the ADA to "provide a clear and comprehensive national mandate" to combat

---

[3] Nothing on the record has been provided as to how often requests for waiver are received by the IHSA. In *Washington*, the Seventh Circuit noted there that "the record indicates that Mr. Washington is the only student athlete to seek a waiver because of a learning disability in more than a decade." 181 F.3d at 852.

disability discrimination. ADA, Pub.L. No. 101–336, § 2, 104 Stat. 327, 329.

Furthermore, the benefit to Lyon if the injunction is issued is readily apparent; he will be permitted to immediately participate with his high school team in wrestling competitions, which, as previously stated, will continue to foster his self-esteem as well as promote his commitment to his academics. The balance of the harms clearly weighs in favor of Lyon, particularly considering Lyon's likely success on the merits; as "[t]he more likely it is that [the movant] will win its case on the merits, the less the balance of harms need weigh in its favor." *Parenthood*, 699 F.3d at 972 (quoting *Girl Scouts*, 549 F.3d at 1100).

*The Public Interest*

Finally, the effect on the public interest must be considered. As discussed above, granting the injunction promotes the public interest by upholding the purposes of the ADA, by providing a reasonable accommodation for a disabled student athlete. The general public has a clear interest in protecting the rights of the disabled; and by providing this disabled individual with the reasonable accommodations to which he is entitled under the law, the interests of the public are furthered.

## CONCLUSION

Lyon has demonstrated that he is likely to succeed on the merits of this case, that no other adequate remedy exists at law, and that he will suffer irreparable harm if he is not granted the waiver he seeks from the IHSA's Rules so that he may participate in his high school's wrestling program. The potential harm or burden to the IHSA for accommodating Lyon's request is moderate and easily outweighed by the benefit to Lyon and to the public in upholding the protections provided by the ADA.

It is therefore ordered that a temporary injunction is hereby issued without bond, requiring the IHSA to provide Lyon a reasonable accommodation or modification of its "8-semester" and "4-year" eligibility requirements and grant Lyon eligibility to participate in varsity wrestling for the remaining semester of the 2012-2013 season and to enjoin the IHSA from preventing Lyon from participating in all varsity wrestling events for the remainder of the 2012-2013 academic year.

It is further ordered that this matter shall be continued to a date certain for hearing on the issuance of a permanent injunction before the Honorable Harry D. Leinenweber. The parties are directed to contact the chambers of Judge Leinenweber forthwith to secure a date for hearing on this issue.

Date: January 11, 2013

_____
JOHN W. DARRAH
United States District Court Judge